## In re Lincoln Market Company.   Appeal of Morris P. Clayton et al.

*Corporation—Directors—Discretion—Sale of corporate property.*

Where the managers of a corporation under authority from the stockholders sell all of the corporate property to a hotel company and take the stock of the latter company in payment therefor, they will not be liable if such stock proves worthless, where it appears that the hotel company's stock never had any market value; that the managers, exercising their best judgment, with the approval of the holders of a majority of the stock of their own company, retained the stock of the hotel company with the expectation that it would at some time have a value, and that owing to the fact that their own company was in debt they could not have distributed the stock of the hotel company in kind to their stockholders.

Argued Jan. 16, 1899.   Appeal, No. 305, Jan. T., 1898, by Morris P. Clayton et al., from decree of C. P. No. 3, Phila. Co., March T., 1897, No. 783, dismissing exceptions to auditor's report.   Before STERRETT, C. J., GREEN, McCOLLUM, MITCHELL, DEAN and FELL, JJ.   Affirmed.

Exceptions to the report of Robert W. Finletter, Esq., auditor.

The facts appear by the opinion of the Supreme Court.

*Errors assigned* were in dismissing exceptions to auditor's report.

*A. T. Freedley*, for appellants.—The dissolution of a corporation operates as a bar to its liability or its power to sue: National Bank v. Colby, 21 Wallace, 609; Cooper v. Oriental Savings & Loan Assn., 100 Pa. 405.

And in dissolution it would seem clear whenever the directors or managers of a corporation have stated an account of their dealings with the corporate property, they should be surcharged with losses arising from breach of trust, as is the case with other trustees: Act of April 9, 1856, P. L. 293; Titusville Oil Exchange's Dissolution, 2 Pa. Superior Ct. 508.

But irrespective of the question of trust, the directors of a corporation can in dissolution proceedings be surcharged on accounting in order to avoid a multiplicity of suits: Perry v. Tuscaloosa Cotton-Seed Oil Mill Co., 9 So. Rep. 217; Peabody v. Flint, 6 Allen, 52; Robinson v. Smith, 3 Paige Ch. 222; Greaves v. Gouge, 69 N. Y. 154; Brinckerhoff v. Bostwick, 99 N. Y. 185; Meyers v. Scott, 2 N. Y. Supplement, 753; Watkins v. Watkins & Turner Lumber Co., 11 App. Div. (N. Y. Sup. Ct.) 517; Phila. v. Keyser, 10 Phila. 50; Allison's App., 77 Pa. 221; Harper's App., 109 Pa. 9; Johnston v. Price, 172 Pa. 427; McGinn v. Benner, 180 Pa. 396; Gwinn v. Lee, 6 Pa. Superior Ct. 646; Souder's App., 57 Pa. 498.

*John G. Johnson*, with him *James Wilson Bayard*, for appellees.—This Court has in repeated instances said that it will not reverse the findings of fact by a master or auditor sustained by the court below except upon plain error shown: Stocker v. Hutter, 134 Pa. 19; Doran v. McConlogue, 150 Pa. 98; Warner v. Hare, 154 Pa. 548; Brotherton v. Reynolds, 164 Pa. 134.

The managers could not safely distribute the assets of the company before its debts were ascertained and paid or provided for: Cook on Corporations, sec. 548; Morawetz on Corporations, sec. 794; Stang's App., 10 W. N. C. 409.

The managers, in the absence of express direction from the stockholders, were vested with general discretion as to the dis-

position of the assets of the company, and properly exercised that discretion: McLean v. Pittsburg Plate Glass Co., 159 Pa. 112; Beach on Private Corporations, sec. 601.

Even if the managers improperly exercised their discretion in retaining the Lorraine Hotel Company stock, there is no evidence of the value of that stock sufficient to justify any surcharge.

OPINION BY MR. JUSTICE DEAN, February 27, 1899:

The Lincoln Market Company was organized as a corporation to do business in Philadelphia, under a special act of the legislature of March 12, 1870, and supplement of April 4, following, with a capital stock of $100,000, divided into 2,000 shares of the par value of $50.00 each. It purchased land on corner of Broad street and Fairmount avenue, and put up buildings for market stalls on first floor, and halls and meeting rooms above, which it rented to tenants; the shares were paid up in full, but nevertheless a debt of $50,000 was contracted in addition, which was secured by mortgage. The business at first was profitable, and several dividends were paid, but for some years before 1893 the venture had become a losing one, and the stock had fallen in value one half. Several unsuccessful attempts were made to dispose of the property and finally, on November 16, 1892, a committee, James B. Doyle, William McDaniel, Samuel T. Fox, George W. Norris and John H. Miller, were specially authorized at a meeting of the stockholders to sell it at such price and on such terms as to them should be satisfactory. Afterwards, on April 4, 1893, at a special stockholders' meeting, the committee was authorized to sell to the Lorraine Hotel Company, and to accept in payment therefor $100,000 in the stock of the hotel company, and further: "That said committee be appointed trustees to effect a dissolution of the corporation, pay its debts and distribute the stock received in payment for said property among such of its stockholders as are willing to accept the same, in the amounts to which they may be severally entitled, and to sell and dispose of so much of said stock as may not be accepted by the stockholders, and divide the proceeds among them in the proportions to which they may severally be entitled." The committee made sale accordingly except, instead of $100,000 stock of the Lorraine

Hotel Company, they received $10,000 cash and $90,000 in stock; in pursuance of the terms a conveyance was executed subject to the mortgage of $50,000. The cash and stock were delivered to the treasurer of the market company, and were thereafter under the control of the board of managers. The Hotel Company tore down the old buildings and erected upon the land a large and costly hotel, which was not completed until the latter part of 1894. By that time it had incurred a large indebtedness for construction; its success was wholly in the future, claims were pressing, and it could not raise money either by loans or sales of stock; the property was in the end sold at sheriff's sale to lien creditors, and nothing was realized for the stockholders. At the annual meeting of the stockholders of the Market Company, on January 8, 1894, the treasurer presented his account, in which he charged himself with the cash and stock received from the Hotel Company. At the annual meeting, in January, 1896, he did not charge himself with the stock, as by the sheriff's sale it had become valueless; this account was audited and approved. In October, 1896, counsel for the Market Company commenced the proper proceedings for the dissolution of the corporation, and as required the managers attached to the petition their final account, which did not show the $90,000 Hotel Company stock, it having been charged off as worthless, but nevertheless, still showed a balance in hand of cash, $10,550.39. An auditor was appointed to hear exceptions to the account and distribute. These appellants, stockholders, sought to have the managers surcharged with the market value of the Hotel Company stock immediately after its receipt by them, on the ground that such value was then $75.00 to $100 per share, and that under the terms of the resolution of the stockholders, already noticed it was their duty to distribute the stock, or sell it and distribute the money; that although often requested to do this by the complaining stockholders, they neglected and refused so to do; this neglect continuing until the stock became worthless, it was claimed, the alleged unfaithful agents were answerable for the loss.

Much evidence was heard by the auditor; some of it tending to show, that the Hotel Company stock had at first a speculative value, and that part of it might, probably, have been sold at a fair price. Whether an attempt to sell a part, would have

depreciated the price, cannot be certainly known.  One thing, however, is clear, it had no actual value based on the earnings of the hotel; that was a matter the future alone could determine.  Good business judgment might, before the completion of the hotel, dictate that it should be held for a very probable prospective future value, or that it should be sold at once, because of the uncertainty incident to the future business of a hotel.  Whether they held or sold, they were only bound to exercise their best judgment, and are not answerable for a mistake of judgment.  We consider it wholly unimportant, whether the managers' authority had its source in the resolution of November 16, 1892, or in that of April 4, 1893, or in both together; at most, they were trustees for the stockholders to make sale of the Market Company's property and receive the consideration; as this consideration represented the capital of the corporation, at this stage in the existence of that body, neither the managers nor the stockholders had authority to divide it among themselves, because the corporation held that fund in trust, not only for the stockholders, but for creditors.  There were creditors with claims, whether well or ill founded, and until dissolution as provided by law, with an exhibition of accounts and opportunity to creditors to present and have their demands adjudicated, there could be no compulsory division of the capital.  Whether the managers ought, in the exercise of common business prudence, to have turned the hotel stock into money, and held the money instead of the stock to await the event of lawful dissolution, was a question of fact.  The auditor, with approval of the court, has on competent evidence found the fact against appellants.  He says : " The stock of the Lorraine Hotel Company never had any market value, and the board of managers of the Market Company, exercising their best business judgment, with the approval of the holders of a majority of the shares of the stock of the Market Company, retained said stock of the Hotel Company, with the expectation that said stock would at sometime have a value."  This being the fact, and on the evidence we cannot say it manifestly is not, the obstacle to success of appellants in their attempt to surcharge the managers for gross neglect of duty is insuperable.

The decree of the court below is affirmed, and appeal dismissed at costs of appellant.