Wettengel *v.* Robinson et al., Appellants.

356 

Argued March 26, 1930. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

 ██

*John O. Wicks,* of *Weller, Wicks & Wallace,* for appellants, O. D. Robinson et al.—The situation which confronted defendants called for the exercise of business discretion.

Prior to sale to Transcontinental Oil Co., Riverside Eastern Oil Co. had sustained heavy losses in having the gasoline of Riverside Western Oil Co. forced on it and this called for an adjustment: Wood's Est., 272 Pa. 8.

Defendants, having acted in good faith and under the advice of counsel, are not responsible for mere error of judgment and mistake of law and there is a strong pre-

sumption that they exercised their best skill and judgment in liquidating the affairs of Riverside Western Oil Co.: Semple's Est., 189 Pa. 385; Com. v. B. & L. Assn., 20 Pa. Superior Ct. 101; Bradley's App., 89 Pa. 514.

Defendants acted as directors in liquidating the affairs of Riverside Western Oil Co. and the question of their liability should be measured by the standard of care required of directors rather than by the standard of care required of technical trustees: Wettengel v. Robinson, 288 Pa. 362.

Directors are only required to exercise reasonable and ordinary care and diligence in conducting the affairs of the corporation, and they are not liable to stockholders for honest mistakes of judgment but only for fraud or gross negligence: Spering's App., 71 Pa. 11; Loan Society v. Eavenson, 248 Pa. 407; Watt's App., 78 Pa. 370.

Trustees are required to exercise only common skill, common prudence and common caution and cannot be held liable for an error of judgment if they acted in good faith: Neff's App., 57 Pa. 91; Pleasonton's App., 99 Pa. 362; Fahnestock's App., 104 Pa. 46.

The government's claim was not only barred by the statute of limitations but all liability was extinguished: Danzer & Co. v. R. R., 268 U. S. 633; United States v. John Barth Co., 279 U. S. 310; Lewis v. R. R., 220 Pa. 317; Com. v. Bank, 293 Pa. 404.

*John A. McCann* and *Henry C. Clark,* with them *Louis E. Graham* and *Clarence M. Charest,* for appellant, United States of America.—The defendants and the plaintiff failed to prove any facts whatsoever effective in starting the running of any statute of limitations against the United States on its tax claim, and the claim must, therefore, be presumed timely.

Section 1106(a) of the Revenue Act of 1926 does not operate in any event to extinguish the government's tax claim because it was repealed as of the date of its pas-

sage by section 612 of the Revenue Act of 1928: Cake v. Bird, 1 Monaghan 466, 470; Nicol v. Ames, 173 U. S. 509.

Congress may impose a retroactive tax: Stockdale v. Ins. Co., 20 Wall. 323, 332; Forbes Boat Line v. Board of Com., 258 U. S. 338, 339; Brushaber v. R. R., 240 U. S. 1.

The Constitution does not impose any implied or any inherent rule of uniformity on the taxing power: Pollock v. Farmers L. & T. Co., 157 U. S. 557; License Tax Cases, 5 Wall. 462, 471; Patton v. Brady, 184 U. S. 608; McCray v. U. S., 195 U. S. 27; Flint v. Stone Tracy Co., 220 U. S. 107, 177.

The rule of general uniformity is not violated by exemption, classification or discrimination, unless so arbitrary or outrageous as to indicate prejudice or favoritism: Knowlton v. Moore, 178 U. S. 41; Cook v. Marshall Co., 196 U. S. 261, 274; Nicol v. Ames, 173 U. S. 509, 521.

The second objection made to the constitutionality of section 612 is that it destroys "vested rights." This is a vague attack. The inapplicability of the argument is illustrated in United States v. Heinszen & Co., 206 U. S. 370, 386-88; Sturges v. Carter, 114 U. S. 511, 518-19; Campbell v. Holt, 115 U. S. 620, 628.

No one has a vested right to a rule of law: North Pacific Ry. Co. v. Ry., 150 U. S. 332.

Neither section 250 (D) of the Revenue Act of 1921 nor any statute placing a period of limitation upon the right of the United States to collect taxes imposed under the Revenue Acts of 1917 and 1918 is applicable to this proceeding in equity to recover trust funds from the former stockholders of the Riverside Western Oil Co. as transferees of its assets: Van Allen v. Assessors, 3 Wall. 573; Park Bank v. Remsen, 158 U. S. 337; Eisner v. Macomber, 252 U. S. 189; Cullinan v. Walker, 262 U. S. 134; United States v. John Barth Co., 279 U. S. 370.

*U. G. Vogan,* for appellee.—The surcharge with interest was proper, the record showing that the appellants knew that this was a valid subsisting debt of the Riverside Eastern Oil Co. to the Riverside Western Oil Co. at the time they distributed the former company's assets to the stockholders.

The other question presented by this appeal is whether or not the dissolved corporation is a necessary party. We contend it is not: Lauman v. R. R., 30 Pa. 42; Steenrod v. R. R., 27 W. Va. 1.

A court of equity having taken jurisdiction, it should settle the entire controversy between the parties and terminate the litigation by making distribution of the funds which were the subject of the suit: Myers v. Bryson, 158 Pa. 246; Hurst v. Brennan, 239 Pa. 216, 223.

OPINION BY MR. JUSTICE SIMPSON, May 12, 1930:

When this case was here before (Wettengel v. Robinson, 288 Pa. 362), we held that defendants, who had been directors of the Riverside Western Oil Company (a West Virginia corporation, which had surrendered its charter and whose stock had been delivered up for cancellation), were, in law, its statutory liquidators, bound to collect its assets and account for them in this State. This they did, were surcharged by the court below in the sums of $66,399.05 and $895 respectively, and, because thereof, have prosecuted the first of the present appeals. It was originally decided that the United States of America was entitled to the balance in the hands of the liquidators, in part payment of taxes due to it; but thereafter the court below opened the decree, rejected the government's claim, and ordered distribution of that balance among the former stockholders of the company. From that part of the decree the government has taken the second of these appeals. We shall decide both of them in this opinion.

The Riverside Western Oil Company and the Riverside Eastern Oil Company were affiliated corporations,

having many but not all of their stockholders in common. In 1919 each company separately agreed to sell and did sell its good will and all its property, except its cash assets and bills and accounts receivable, to the Transcontinental Oil Company, in consideration of certain money and stock of the latter company. Defendants were then, as they had been for some time, large holders of stock in and directors of each of the two Riverside Companies, and, as such directors, received the consideration paid by the Transcontinental Company. Shortly after the payment, each of the Riverside Companies surrendered its charter, in accordance with the laws of the state of its incorporation, and thereafter defendants, as the statutory liquidators of each corporation, took charge of its affairs in order to collect its assets and distribute them, first to pay its debts and second to divide the balance, if any, rateably among its stockholders.

Among the claims which came into the hands of defendants, as liquidators of the Riverside Western Oil Company, was one of some $90,000 due by the Riverside Eastern Oil Company. The latter company was solvent, and defendants, as its liquidators, had in their hands sufficient available assets, received on its account, to have paid the amount due the Riverside Western Oil Company in full. Instead of thus applying them, however, they distributed the whole thereof to the stockholders of the Riverside Eastern Oil Company. This exhausted the assets of the latter company, except certain outstanding book accounts, which defendants had unsuccessfully attempted to collect for about nine months. These accounts were not assigned to or for the benefit of the Riverside Western Oil Company; but defendants subsequently collected about one-sixth thereof, and paid the sums thus received for the Riverside Eastern Oil Company to the Riverside Western Oil Company, leaving due and unpaid by the former company the sum of $66,399.05, the first item of surcharge. The

uncollected book accounts still belong to the former company.

Defendants' excuses for their conduct in this matter do not excuse them. They first say that the Riverside Eastern Oil Company had an equitable claim against the Riverside Western Oil Company, growing out of the fact that while both were in active operation, if the latter had more gasoline than it could readily sell, it would, at times, following an established custom, bill the gasoline to the former company, without receiving an order so to do, that the latter would accept it and pay for it, though it could "probably" have then purchased "distress gasoline" at a less price, that is, gasoline which other owners were compelled to sell. The loss, if any, that the Riverside Eastern Oil Company "probably" suffered is not even estimated in the record or in defendants' brief. Of course, having accepted the gasoline, at the price at which it was billed, and later sold it as any other owner would have done, the Riverside Eastern Oil Company had no claim, at law or in equity, to ask a refund of any part of the purchase price; and if they had, and equity had assumed jurisdiction, no one could tell from this record what amount to allow. If the ability to collect the debt due by the Riverside Eastern Oil Company had been in doubt, defendants might have been justified in compromising the claim; but there was no such doubt and there was no compromise. If the two companies had been going concerns, a compromise might have been sustained, even if there was no doubt regarding the ability to collect, for business judgment might have justified giving up part of a claim in order to retain a customer; but neither company was in business when defendants distributed all the available assets of the Riverside Eastern Oil Company to its stockholders.

The claim so made is the more remarkable when it is remembered that defendants, as directors of the Riverside Western Oil Company, themselves sent all the gasoline mentioned to the Riverside Eastern Oil Company,

and then, as directors of the latter company, accepted the gasoline, sold it and paid the money into its treasury. Their claim in effect is, therefore, that as directors of one company they took advantage of themselves as directors of another company, and then, though there is no principle of law or equity to justify their action, attempted to undo their wrongdoing to the prejudice of the stockholders of the Riverside Western Oil Company, for whom they were acting as liquidators. Both law and equity turn deaf ears to such a contention. Curiously enough, defendants' one witness admits they could properly be held liable if nothing had been left at the time they distributed all the available assets; but apparently could not see why they should be surcharged when they knowingly retained only uncollected, and in large part uncollectible, book accounts, in their attempt to remedy equitably a supposed wrong of which, if it was one, they were personally guilty.

Defendants next suggest that, as the stockholders of the Riverside Eastern Oil Company were led to believe, when they voted to sell its assets to the Transcontinental Oil Company, that they would get "approximately" one share of its stock for nine shares of the former company, it was feared that they might make a "fuss" if they did not get the quantity of stock they expected, might file a bill to compel a present distribution, and that this, in some unstated way, might harm the stockholders of the Riverside Western Oil Company. It is not suggested that any suit was threatened, nor that one could possibly have been successful if it had been brought. Certainly this imaginary difficulty did not justify defendants in giving away, without consideration, the assets in their hands available to pay the stockholders for whom they were acting as liquidators.

It is also said that defendants should not be surcharged because they acted on the advice of counsel. This would not be a defense in this kind of a case under any circumstances (39 Cyc. 418; 1 Am. & Eng. Ency.

of Law, 2d ed., 897), and it is not a defense in any case unless the advice is given after all the relevant facts have been fully stated to counsel: Bell v. Atlantic City R. R. Co., 202 Pa. 178, 181. Here there is no proof that counsel was ever told all the relevant facts. Defendants' witness stated in a general way that "we consulted [counsel] right along"; but there is not even a suggestion that the facts touching this matter were ever laid before him, or that he ever advised defendants that they could act as they did.

The only other suggestion to which we need refer on this phase of the case, is a hint that defendants cannot be surcharged in their account as liquidators of the Riverside Western Oil Company, because of their distribution of the assets of the Riverside Eastern Oil Company to and among its stockholders, since, in so doing, they were acting in a different capacity than they are in this accounting. If this hint is to be taken seriously, which it is difficult to do, the answer is that as liquidators of the Riverside Western Oil Company, they knew that, as liquidators of the Riverside Eastern Oil Company, they were distributing assets of the latter company without paying its debts to the former company, and were in duty bound to take proceedings against themselves to prevent themselves from making such wrongful distribution.

It is not possible to read the record in this case without concluding that the claim now made is entirely an afterthought. As already pointed out, defendants admit they would have been liable had there been no other assets of the Riverside Eastern Oil Company. Their liability for the actual resulting loss does not the less exist because the only assets they retained were worth but one-sixth of the oustanding indebtedness. Over and over again their witness said "we *thought* that there was enough in the accounts receivable to take care of" the indebtedness due to the Riverside Western Oil Company. They made no endeavor to ascertain whether or not this

was so, and they knew that the accounts had not been collected during the nine preceding months. It may be that there were "extenuating circumstances," as they claim, but they had no legal right to act as they did, and it is evident that they were willing to take the chance of a sufficient collection being made, in order that they, and their co-stockholders in the Riverside Eastern Oil Company, could get immediate distribution of all its available assets. After they had taken the chance and lost, they did not personally offer to return that which they had wrongfully paid to themselves, nor did they take any steps to compel their co-stockholders so to do. Surely, they cannot justly complain because they are made liable for their breach of trust, whether or not it be treated as a technical trust.

The facts on which the surcharge of $895 is based are these: Defendants had in their hands certain stock of the Transcontinental Oil Company, and because of this had the right to subscribe to 179 shares of stock of the Mid-Columbia Oil and Development Company. Instead of selling this subscription right, as they could have done, they used $895 of the money they had collected as liquidators of the Riverside Western Oil Company, and took up the stock. The court below found that this was an unauthorized speculation by defendants, who did not have authority to purchase stock, but only to convert existing assets into money, for the purpose of distribution. As experienced business men they knew this. Had they sold the rights, in compliance with their duty to collect, they would have received the purchase price; if the attempt to sell showed the rights had no value, then they would have known that it would be a manifest wrong to expend the money in their hands in the purchase of the stock, in the speculative hope that at some future date it would be valuable. At the time of the audit it had no market value. The fact that some of them speculated with their own money in taking up other shares on their own account, may suffice to show

that they did not act in bad faith; but it does not show they properly used the funds in their hands, when they did exactly the reverse of what they were legally bound to do.

The claim of the United States of America, the disallowance of which caused the second appeal, is for income taxes for the years 1917, 1918 and 1919, the last of the returns therefor having been made by the Riverside Western Oil Company on March 30, 1920. The commissioner of internal revenue was not satisfied with the returns and made special assessments for those years, the last of them being dated March 11, 1924.

In Russell v. United States, 278 U. S. 181, 185, after reviewing the various revenue acts prior to and including that of 1924, it was said that "Under the Act of 1918 both assessment and suit within five years were necessary [if the right to collect the taxes was not to be barred]. The Act of 1921 required that taxes imposed thereby should be assessed within four years; that the taxes payable under the Acts of 1918, and earlier ones, should be assessed within five years; and it limited the period within which any suit might be brought to five years after the return. With the exceptions specified by section 278, the Act of 1924 requires that assessment of taxes laid by it or the Act of 1921, and any suit to collect the same, shall come within four years after the return; also in respect to taxes due under the Act of 1918, etc., that no assessment or suit shall be permitted later than five years after the return...... The rather obvious design, we think, was to deprive section 278 [of the Act of 1924] of any possible application to cases where assessment had been made prior to June 2, 1924." It follows that, even if we treat the presentation of this claim on April 11, 1928, as equivalent to a suit (there never having been any other), it was then barred because no suit had been brought within five years after the returns were made, the last of which had been filed March 30, 1920; and the special assessments made by

the commissioner of internal revenue did not affect this conclusion, since they were all "made prior to June 2, 1924."

It was contended by the United States, however, that the defense of the statute of limitations must be pleaded or else it cannot be considered; and, hence, as no objection was made to the claim upon this ground, at the time it was offered in evidence, the right to object must be deemed to have been waived. This contention was sustained by the court below, which further held, however, that as section 1106(a) of the Revenue Act of February 26, 1926, provides that "The bar of the statute of limitations against the United States in respect of any internal revenue tax *shall not only operate to bar the remedy but shall extinguish the liability,*" the rule invoked did not apply, and the failure to object when the claim was presented could not result in restoring a liability which was in terms extinguished.

To meet this difficulty, the government points to section 612 of the Revenue Act of May 29, 1928, which provides that "Section 1106(a) of the Revenue Act of 1926, is repealed as of February 26, 1926," that is, as of the date of its passage. Undoubtedly that provision would be effective as to all taxes the liability for which had not been extinguished prior to the passage of the Act of 1928, but would it as to those where it had? The court below, relying on Dobbins v. Commissioner of Internal Revenue, 31 Fed. (2d) 935, decided it would not. In construing section 612, it was there said that it "did not revive a dead liability or create a new obligation." The same conclusion was reached in United States v. John Barth Co., 27 Fed. (2d) 782; Erie Coal & Coke Co. v. Heiner, 33 Fed. (2d) 135, and Pepsin Syrup Co. v. Schwaner, 35 Fed. (2d) 197. True, the first of these cases was reversed in United States v. John Barth Co., 279 U. S. 370, but the Supreme Court expressly refused to pass upon the government's contention that the Act of 1928 "restores and gives life to the tax retrospec-

tively." A search fails to disclose any opinion by the Supreme Court of the United States, or by any federal circuit court of appeals, which reaches a different conclusion from that of the court below. Campbell v. Holt, 115 U. S. 620, relied on by the government, decides simply that a statute which limits the time within which suit may be brought, may be repealed, although, in the particular case under consideration, the statutory limitation had run before the repealing statute was passed. Its effect as a precedent has been limited, however, to cases where the repealed statute was purely one of limitation. On this point see William Danzer & Co. v. Gulf and Ship Island R. R. Co., 268 U. S. 633, where Campbell v. Holt is distinguished, and it is held that if a statute both creates the liability and limits the time within which suit may be brought, the limitation cannot be repealed after the right to sue has been lost, because (page 637) the "effect would be to deprive defendant of its property without due process of law in contravention of the Fifth Amendment."

It is not necessary to consider this point further, for we are clearly of opinion that another principle of law stands as an effectual bar to the government's claim. The provision quoted from section 612 of the Act of 1928, is retrospective, but the important question is as to the extent thereof. In Union Pacific R. R. Co. v. Laramie Stockyards Co., 231 U. S. 190, 199, it is said: "The first rule of construction is that legislation must be considered as addressed to the future, not to the past. The rule is one of obvious justice and prevents the assigning of a quality or effect to acts or conduct which they did not have or did not contemplate when they were performed. The rule has been expressed in varying degrees of strength but always of one import, that a retrospective operation will not be given to a statute which interferes with antecedent rights, or by which human action is regulated, unless such be 'the unequivocal and inflexible import of the terms, and the manifest

intention of the legislature.' " This rule must be of at least equal application when determining the scope of legislation admittedly retrospective in some degree. The justice is not less obvious in such cases, and hence a statute "which interferes with antecedent rights [must fail in its attempted application to a particular case, unless the language used shows that such was] the manifest intention of the legislature." No such language appears here. There is not the slightest hint of an intention to reopen cases like the present, where the liability had been wholly extinguished. On the contrary, as the government's brief advises us, the expressed reason, appearing in the report of both the "Senate and House committees proposing the 1928 Revenue Act," was because "Section 1106 (a) of the 1926 Act failed to resolve many doubtful questions as to the legal effect which follows the expiration of the period of limitations prescribed for the assessment or collection of a tax, or for the making of a refund or credit, or the bringing of a suit for refund." The utmost effect which can be given to that reason,—and it is the only one of which we have been advised,—is that when making settlements in the future the government shall not be hampered by the "doubtful questions" which bothered it in the past. Certainly it cannot justly be construed to give life to the taxes we are now considering, which were irrecoverable before even the Act of 1926 was passed.

It follows that this appeal must be dismissed also; but the costs thereof cannot be judicially charged against the United States: United States v. Chemical Foundation, 272 U. S. 1, 20.

The decree is affirmed and both appeals are dismissed; defendants to pay the costs on their appeal.