## Minersville Progressive Building and Loan Association Case.

Argued April 27, 1942. Before SCHAFFER, C. J.; MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

J. L. N. *Channell,* with him *Melvin H. Jenkins,* for appellants.

*E. Russell Shockley,* Deputy Attorney General, with him *Claude T. Reno,* Attorney General, and *C. F. Muehlhof,* for appellee.

OPINION BY MR. JUSTICE DREW, May 11, 1942:

This appeal by the Liquidating Trustees of The Minersville Progressive Building and Loan Association is from an order of the Court of Common Pleas of Schuylkill County, dismissing their appeal from the decision of the Department of Revenue of this Commonwealth denying their petition for a reassessment of the State personal property tax for the year 1940.

The sole question here presented for consideration is whether or not the assets in the possession of liquidating trustees of a building and loan association undergoing voluntary dissolution are subject to the tax imposed by the State Personal Property Tax Act of June 22, 1935, P. L. 414, as re-enacted and amended by the Act of May 5, 1939, P. L. 76.

The Commonwealth concedes that assets held or possessed by a building and loan association are expressly exempt, but contends there is no exemption as to assets held or possessed by the liquidating trustees of such an association, relying on the decision in the *Shillington*

*Bank Case,* 331 Pa. 540, to support its contention. That case is readily distinguishable from the facts and circumstances of the instant case, and, therefore, is not controlling. The method of liquidation there applied is materially different from that with which we are here confronted, as is also the exemption provision of the statutes involved.

In the *Shillington Bank Case,* supra, the question was whether the property in the hands of liquidating trustees of an insolvent state banking institution was subject to the personal property tax for county purposes as imposed by the Act of June 17, 1913, P. L. 507, as last amended by the Act of April 21, 1933, P. L. 54. After the banks there involved were placed upon a restricted basis, there was a plan of reorganization voluntarily adopted by the various individuals interested under which certain property was transferred to a bank organized for the purpose, and the remaining assets were delivered to three trustees of each bank for the purpose of liquidation and distribution. The liquidating trustees actually took over the assets and against them issued participation certificates to depositors, creditors and stockholders. Thus they were no longer depositors, creditors and stockholders, but merely pro rata equitable owners of assets held for their benefit by the trustees. When the stock was replaced by the certificates and no tax paid thereon, obviously the assets themselves became taxable since they no longer fell within the exemption provided by the Act of 1913, supra, section 1, as amended. That exemption provides as follows: "That corporations . . . liable to tax on capital stock for State purposes, shall not be required to make any report or pay any further tax, under this section, on the mortgages, bonds, and other securities owned by them in their own right; . . ." The trustees did not act as agents of the banks, but were holding personal property of the individuals owning the certificates, which clearly was subject to the tax.

In the instant case, instead of a voluntary plan of reorganization adopted by interested individuals, there is

nothing more than a dissolution conducted under the supervision of the Department of Banking in accordance with the method prescribed by statute. The process of liquidation is dictated as to form and manner by the provisions of the Act of May 5, 1933, P. L. 457, Art. XI, known as the Building and Loan Code, which provides, inter alia, that a plan of liquidation be proposed by the affirmative vote of two-thirds of the directors of an association and submitted to the shareholders for adoption by the affirmative vote of a majority of the shareholders, and upon the plan being adopted, the shareholders shall elect the trustees who are to liquidate the assets under the powers granted them by the association (section 1103) ; that a trustee, before entering upon his duties, must "furnish to the association a bond . . . conditioned upon the faithful performance of his duties as liquidating trustee" (section 1108) ; that the Department of Banking has "the same power to examine or investigate the affairs of an association which is in the process of voluntary dissolution . . . as is provided by law in the case of associations which are not in the process of voluntary liquidation" (section 1110) ; and that an association continues in existence until the trustees "have completely liquidated and distributed the assets" and have forwarded "articles of dissolution . . . to the Department of Banking", and it is only after such articles have been endorsed by the Department of Banking, sent to the Department of State, and a certificate of dissolution issued by the latter to the association, that "the existence of the association shall cease" (section 1113). It is obvious, therefore, that the liquidation process is but a statutory device for the eventual dissolution of building and loan associations, and that the proposal and adoption of a plan of liquidation is entirely the act of the association, not that of individuals. Under the Building and Loan Code, the association continues to exist while in the process of dissolution, and for that reason it continues to fall within the exemption contained in section 3 of the Act of 1935, supra, as re-enacted

and amended by the Act of 1939, supra, which reads as follows: "That the provisions of this act shall not apply to building and loan associations or to shares of stock issued by building and loan associations . . ." These liquidating trustees are in reality nothing more than agents of the corporation selected for the special purpose of winding up its affairs. The inception of the dissolution process does not terminate the corporate existence, change the character or ownership of the assets, or create a liability for the State personal property tax where none existed before.

Order reversed.