## Jinks v. George S. Hensel B. & L. Assn. et al.

*Stanton W. Kratzok*, for plaintiff.
*James R. Wilson*, for defendants.

SLOANE, J., December 8, 1942.—

### Statement of the pleadings

(a) The bill prays specific performance of defendants' written agreement to convey certain real estate to plaintiff or his nominee for $3,200.

(b) Defendant liquidating trustees of the defendant insolvent building and loan association admit the written agreement to sell and convey but in their answer to the bill they set forth that a price higher than that offered by plaintiff was offered by another, subsequent to the execution of the agreement with plaintiff. Defendants ask that the bill be dismissed, plaintiff to be

indemnified by them against the cost of title insurance, conveyancing, and his other out-of-pocket expenses, and that the agreement of sale in plaintiff's possession be delivered to them for cancellation.

The person who submitted the higher offer, Roy Sherrid, was allowed to intervene in opposition to the prayer of the bill.

At the hearing before us, the facts, concerning which there was no substantial dispute, were developed by stipulation of counsel and read into the record.

From the pleadings and stipulation, we make the following

*Findings of fact*

1. The corporate defendant, George S. Hensel Building & Loan Association, became insolvent and at a meeting of its shareholders held after due notice on January 14, 1938, adopted a resolution and plan for voluntary dissolution of the association in accordance with the Building and Loan Code.

2. The plan of voluntary dissolution authorized the liquidating trustees, by no less than a majority vote, to sell all the assets, including the real estate of the association; it was approved by the Department of Banking and a certificate of election to dissolve was filed with the Department of State on February 28, 1938.

3. The present qualified liquidating trustees of the defendant association are defendants William R. Hartley, Sidney L. Coburn, and David W. Harris.

4. On May 15, 1942, by written agreement, Samuel Shoemaker, agent for the liquidating trustees, undertook to sell to plaintiff, Samuel H. Jinks, or his nominee, premises 1617-19 Catharine Street, Philadelphia, together with five small properties in the rear thereof, for the sum of $3,200, $300 of which was payable at the execution of the agreement and the balance at settlement, which was to take place on or before June 18, 1942.

5. The agreement of sale was approved by written endorsement and signed and sealed by William R. Hartley, Sidney L. Coburn and David W. Harris, defendants, liquidating trustees of George S. Hensel Building & Loan Association.

6. Plaintiff's representative delivered to defendants a check for the deposit money of $300, made application for title insurance and arranged for settlement to be held on May 28, 1942, notifying defendants thereof.

7. Prior to the date fixed for settlement, defendants received from Roy Sherrid, intervening defendant, an offer to purchase the same premises for $3,700, and they advised plaintiff's representative that they would not consummate the sale to plaintiff because of the receipt of the higher offer.

8. Plaintiff, through his representative, was, at the time fixed for settlement, and since then has been, ready and willing to comply with the terms of purchase contained in the written agreement of May 15, 1942, and to make settlement thereunder.

9. Defendants have refused to make conveyance to plaintiff, and have tendered to his attorney return of the deposit check of $300 and moneys sufficient to cover title insurance charges and conveyancing and other costs incurred by plaintiff and his nominee in attempting to make settlement, which tender was refused.

## Discussion

There is no question here of inadequacy of price at the time of the signing of the agreement,[1] and there is no question or contention of fraud or unfairness in the transaction as in Welsh et ux. v. Ford et ux., 282 Pa. 96 (1925), or as in the earlier cases cited on page 99 of that opinion. The one question is, the parties agree, whether the liquidating trustees were bound to accept

---

[1] The inference of inadequacy, of course, can be gotten from the fact that not long after the signing of the agreement a higher offer was made, but defendants do not raise the question.

the subsequent higher offer. If not, specific performance should be our decree; if so, plaintiff's bill should be dismissed, with return to plaintiff of the down-money check and out-of-pocket expenses (see Kargiatly v. Provident Trust Co. et al., 338 Pa. 358 (1940)).

We approach the question with a determination to give proper and simple assurance and finality to a signature under a plain promise unless statute or decision compels or advises otherwise. If possible, we should not allow uncertainty and apprehension to invade a point where certainty has been a first principle.

We do know, as it is well known by now, that an executor or other testamentary trustee has limitation upon his power in executing an agreement for the sale of real estate "and persons dealing with him are bound to be cognizant of the extent of his powers [citing cases]": Clark et al. v. Provident Trust Co., Trustee, et al., 329 Pa. 421, 426 (1938). See 1 Ladner's Real Estate Conveyancing in Pennsylvania (1941) 95. But this is because by legislation "the Orphans' Court has power to control executors and other testamentary trustees in the exercise of their powers over real and personal estate. There would seem to be good reason, therefore, to hold that the Orphans' Court has power to review, set aside, and if necessary to order a resale of real estate made under a testamentary power.": Dundas' Appeal, 64 Pa. 325, 331 (1870). So that, even where a sale was made under a power conferred by a will, it was held that the orphans' court had jurisdiction to intervene and order a resale: Fricke's Estate, 16 Pa. Superior Ct. 38 (1901). And the later and present Orphans' Court Act of June 7, 1917, P. L. 363, sec. 9(d), 20 PS §2244, places the activities of fiduciaries of decedents' estates under the direct control and supervision of the orphans' court. Because of that, because the jurisdiction of the orphans' court is plenary over decedents' estates, it is the duty of that court in

the official care and conservation of those estates to see that best prices or at least fair value is obtained in sales of decedents' estates real estate: Orr's Estate, 283 Pa. 476 (1925); Hays' Estate, 286 Pa. 520 (1926); Mc-Cullough's Estate, 292 Pa. 177 (1928). See Crawford's Estate, 321 Pa. 131, 134, 135 (1936). To that substantial extent there is acknowledged limitation upon fiduciaries' powers to sell and to agree to sell; and prospective vendees are pressed with that knowledge. The administration of decedents' estates is a judicial administration, and everybody who deals with an estate must act accordingly.

What this case comes to is whether building and loan associations in voluntary liquidation are in the same status as to the sales of their real estate as decedents' estates. Unless we can ascertain precisely such similar status, we do not think it wise to find one.

Prior to the enactment of the Building and Loan Code,[2] the desire to avoid the expense and cumbersomeness of liquidation through the common pleas court (as provided for by applicable statute, Act of April 9, 1856, P. L. 293, 15 PS §501; Commonwealth ex rel. v. Slifer, 53 Pa. 71 (1866)), led to the practice of voluntary dissolution of building and loan associations; and such nonjudicial, nonstatutory process was upheld by the courts where no inequity to shareholders resulted. See Malis v. Homer B. & L. Assn., 314 Pa. 321, 324, 325 (1934); Stone v. Schiller B. & L. Assn. et al., 302 Pa. 544, 557 (1931); Heidelberger, Trustee, v. Municipal B. & L. Assn., 117 Pa. Superior Ct. 38, 42 (1935); Segal, Pennsylvania Banking and Building and Loan Law (1941), vol. 1, pp. 647, 651-2. Cf. Griffith v. Daylight Savings B. & L. Assn., 142 Pa. Superior Ct. 542, 544 (1940).

The legislature from session to session has made express and full provision for voluntary dissolution of

---

[2] Building and Loan Code of May 5, 1933, P. L. 457, art. VII, 15 PS §1074.

most types of corporations [3] and associations,[4] including building and loan associations.[2] Apparently these acts were passed in recognition that the winding up of corporations and associations can normally be more effectively and economically done without the active jurisdiction and responsibility of the courts. Recourse to court is not required, but the right is preserved for cases that warrant it, and the common-law duty of the persons administering the dissolution to exercise good faith and reasonable care is not impaired: Mason v. Pewabic Mining Co., 133 U. S. 50 (1890) ; Wettengel v. Robinson et al., 300 Pa. 355 (1930) ; In re Lincoln Market Co., 190 Pa. 124 (1899). In the case of building and loan associations, further safeguards are provided in the form of approval by the Department of Banking at various stages of the voluntary dissolution (of the plan of dissolution (sec. 1104), certificate of election to dissolve (sec. 1105), bond of liquidating trustees (sec. 1108), payment of dividends (sec. 1111)), examination of the affairs of the association (secs. 1102, 1104), and assumption by that department of the winding-up activities of an insolvent association when in its discretion it considers such possession desirable (sec. 1102).

While the liquidating trustees must comply with specific requirements as to notice to interested parties (sec. 1106) and proof and allowance of claims (sec. 1107), and are bound by the order of preference in dis-

---

[3] Business corporations: Business Corporation Law of May 5, 1933, P. L. 364, art. XI, secs. 1102-1105, 15 PS §2852-1102-5, as amended July 31, 1941, P. L. 636, sec. 9; electric coöperative corporations: Electric Coöperative Corporation Act of June 21, 1937, P. L. 1969, sec. 29, 14 PS §279.

[4] Coöperative productive and distributive associations: Act of June 7, 1887, P. L. 365, sec. 23, 14 PS §23; agricultural associations: Act of June 12, 1919, P. L. 466, sec. 20, 14 PS §60; Act of April 30, 1929, P. L. 885, sec. 19, 14 PS §99; credit associations: Act of May 25, 1933, P. L. 1027, sec. 14, 14 PS §127; credit unions: Act of May 26, 1933, P. L. 1076, sec. 19, 14 PS §219.

tribution established by the code (sec. 1112), no regulation or approval of contracts, sales, and other transactions with third parties made in the course of liquidating activities is imposed. That is significant. The Building and Loan Code simply provides (sec. 1105):

"Upon the filing by the Department of State of the certificate of election to dissolve, the association shall cease to transact its business, and the liquidating trustee or trustees, as the case may be, shall commence the liquidation of the association. The liquidating trustee or trustees shall thereafter be authorized to carry out, in his own name or in their own names as liquidating trustee or trustees of the association, the powers granted to him or to them by the plan of voluntary liquidation."

Thus the only restriction upon the powers of the trustees is that the activity be one of liquidation and not one of a going business, so to speak.

The corporate life of the association continues during the process of liquidation and distribution. The liquidating trustees act in its behalf in their own names, as agents of a dissolving corporation.

"These liquidating trustees are in reality nothing more than agents of the corporation selected for the special purpose of winding up its affairs. The inception of the dissolution process does not terminate the corporate existence, [or] change the character or ownership of the assets . . .": Minersville Progressive B. & L. Assn. Case, 344 Pa. 620, 623, 624 (1942). See also Albert Co. v. Ruberg et al., Liquidating Trustees, 43 D. & C. 527 (1942).

The code expressly provides (sec. 1113): "Upon the issuance of the certificate of dissolution, [after distribution] the existence of the association shall cease."

We do not consider it determinative of our question to call the liquidating trustees "agents" or to designate them "trustees", as counsel appear to say. The name is

not the thing,[5] for both agents and trustees may have conferred on them limited or unlimited powers and authority, but we do think the continuance by the legislature of the corporate existence pending dissolution indicates an intention that the liquidation proceedings should not impose any restriction upon the authority which may be conferred on the liquidating trustees by the plan of dissolution. That authority may be as broad as that conferrable by an operating corporation, with the exception that liquidation activity alone may be pursued.

It is true, as defendants point out, that the equity jurisdiction of the common pleas court embraces control over trustees and trust property (Act of June 16, 1836, P. L. 784, sec. 13, 17 PS §§281, 282; Act of June 14, 1836, P. L. 628, 20 PS §2741), as well as sales (Revised Price Act of June 7, 1917, P. L. 388, 20 PS §1561 et seq.), and the Building and Loan Code states that its provisions "shall not be deemed to curtail in any manner whatsoever the equity jurisdiction and powers of the courts of this Commonwealth": sec. 7. But it is apparent that the legislature has provided a voluntary and not a judicial administration of the affairs of a dissolving building and loan association. It has provided no specific assumption of matters by an equity court. It did not even see fit to do what it did in the Banking Code: require court approval of contracts for the sale of real estate owned by liquidating banks (Department of Banking Code of May 15, 1933, P. L. 565, sec. 718A, 71 PS §§733-718A),

---

[5] Some of the cases have spoken of the duty of a "trustee" generally to dispose of trust property upon terms most advantageous, but the dicta were not necessary to decision, and do not aid us here. For instance in Clark et al. v. Provident Trust Co., Trustee, 329 Pa. 421, 426 (1938), a broker's commission on a sale not completed because an orphans' court fiduciary had sold on a higher offer was involved, and in Good v. Capital Bank & Trust Co. et al., 337 Pa. 353 (1940), the basis of the decision was that the approval of the contract for the sale which was required by the terms of the contract itself had not been secured.

a requirement held not to warrant rescission of an approved contract when the Secretary of Banking later receives a higher offer: In re Central Trust & Savings Company, 41 D. & C. 304 (1941). Defendants seek to justify rescission here without any such requirement.

For another thing, we observe this, though the Orphans' Court Act was amended subsequent to the Clark case, supra, to provide that, where an agreement of sale is rescinded upon receipt of a higher offer by a fiduciary subject to the orphans' court's supervision, brokers' commissions shall be divided among the two brokers procuring the two agreements (sec. 9[p], as amended July 2, 1941, P. L. 227, sec. 1, 20 PS §2254), no similar provision has been enacted with reference to sales by officials liquidating the various types of associations and corporations for which voluntary dissolution procedure is authorized. To us this is an additional indicium that the legislature did not contemplate the rule applicable to decedents' fiduciaries to extend to voluntary liquidators of associations.

We find no specific basis for permitting the liquidating trustees to rescind their authorized act, engaged as they are in a liquidation process which the legislature has not considered necessary to place under the control of a court or even of an administrative department of the government.

We conclude from the state of the statutory provisions that the legislature has not disturbed the general rule protecting the enforcibility of agreements as written and, it would seem, has resolved the issue between greater realization for the shareholders and maximum efficacy of dissolution machinery in favor of the latter.

We reach the following

### Conclusions of law

1. The written agreement of May 15, 1942, between the defendants, William R. Hartley, Sidney L. Coburn

and David W. Harris, liquidating trustees of the George S. Hensel Building & Loan Association, and plaintiff, Samuel H. Jinks, or his nominee, was and still is binding upon defendants.

2. Upon the execution and delivery of that agreement, plaintiff became the equitable owner of the real estate, the subject of the agreement, encumbered by the purchase money.

3. The intervenor, Roy Sherrid, has no legal or equitable title to or rights in the said real estate.

4. Defendants have no right or duty to rescind the agreement of May 15, 1942.

5. Plaintiff is entitled to specific performance of the written agreement of May 15, 1942.

*Decree nisi*

And now, December 8, 1942, upon consideration of the foregoing case, it is ordered, adjudged and decreed as follows:

1. That defendants William R. Hartley, Sidney L. Coburn and David W. Harris, liquidating trustees of George S. Hensel Building & Loan Association, convey to plaintiff, Samuel H. Jinks, or his nominee, premises 1617-19 Catharine Street, Philadelphia, and the five small properties to the rear thereof, as contemplated by and in accordance with the agreement between defendants and plaintiff, and upon payment to them by plaintiff or his nominee of the full purchase price named in said agreement.

2. That each party shall pay his or their own costs.

The prothonotary will enter this decree nisi and give notice to the parties or their counsel of record, of the entry of the decree, and, if no exceptions are filed thereto within 10 days thereafter, the decree nisi shall be entered as the final decree, by the prothonotary, as of course.