## Malis, Appellant, *v.* Homer Building and Loan Association.

Argued January 17, 1934. Before FRAZER, C. J., SIMP-SON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*H. B. Beitler,* with him *Louis Jacobs* and *I. Finkelstein,* for appellant.—The adjudication of a court which affects a vested right may be unconstitutional in the same way that a statute would be: Galey v. Guffey, 248 Pa. 523; Phila. Trust Co. v. Traction Co., 258 Pa. 152.

A court order granting an indefinite stay of execution is unconstitutional: Hogsett v. Thompson, 258 Pa. 85; Phila. Trust Co. v. Traction Co., 258 Pa. 152.

The Act of May 5, 1933, P. L. 457, section 1112, does not by its terms cover the factual situation in this case.

*N. S. Winnet,* with him *B. I. deYoung* for appellee.— It is illegal for a creditor of a liquidating building and loan association to obtain a priority payment over other creditors by attachment proceedings: Brown v. Assn., 302 Pa. 254; Stone v. B. & L. Assn., 302 Pa. 544; Weinroth v. B. & L. Assn., 310 Pa. 265; Nice Ball Bearing Co. v. B. & L. Assn., 310 Pa. 560.

The action of the court was proper: As an exercise of the well defined authority of the courts to regulate corporations in general: McDougall v. Huntingdon Co., 294 Pa. 108.

OPINION BY MR. JUSTICE DREW, March 19, 1934:

Plaintiff is the holder of five demand promissory notes totalling $22,000, issued by certain building and loan associations, whose successor by merger defendant is. In April, 1932, plaintiff instituted suit against defendant upon the notes, but the latter agreed to pay off the obligations at the rate of $2,000 a month, and the action was not pressed. These payments fell in arrears, however, and on October 27, 1932, plaintiff entered judgment for want of an affidavit of defense for $13,685, the amount then due. On November 15, 1932, the shareholders of the defendant voted a voluntary liquidation of the association and appointed trustees for that purpose. The liquidating trustees agreed

to pay off the judgment at the same rate as had formerly been agreed upon—$2,000 a month—whereupon plaintiff discontinued an attachment which had been issued at the time judgment was entered. Under this arrangement further payments were made, but the liquidating trustees failed to carry out their agreement, and on September 12, 1933, plaintiff caused an attachment sur judgment to be issued, summoning the Integrity Trust Company as garnishee. In the writ of attachment plaintiff gave credit for payments on the judgment. One month later, defendant, through its liquidating trustees, filed a petition for a rule to dissolve the attachment, stay execution thereon, and restrain plaintiff from further attachment or execution proceedings until further order of the court. An answer was filed, and, after argument, the court below made absolute the rule granted upon the petition. Plaintiff thereupon took this appeal.

The sole ground upon which defendant based its petition, and upon which the court below acted, was that to permit plaintiff to enforce payment of his claim in full before other general creditors were paid would constitute a preference, in violation of section 1112 of the Building and Loan Code of May 5, 1933, P. L. 457. This proposition cannot be sustained; the premise upon which it rests—that the distribution of assets in the voluntary liquidation of defendant is governed by the act—has no foundation in fact. The section upon which reliance is placed purports only to govern the order to be followed "in the distribution, *pursuant to the provisions of this act,* of the assets of any association" in voluntary dissolution. This statute was not enacted until over five and a half months after defendant had voted to liquidate and had appointed its liquidating trustees, and did not go into effect (section 1301) until July 3, 1933, seven and one half months after defendant had taken this step. Certainly, therefore, it is not to be assumed that defendant's voluntary liquidation, be-

gun so long before the Building and Loan Code was even in existence, was being undertaken "pursuant to the provisions of this act." And even were it possible that a liquidation so begun might be brought under the act, as to which we express no opinion, the record before us is entirely barren of either averment or proof that such was done. On the contrary, it is expressly averred in paragraph ten of plaintiff's answer that the liquidating trustees are operating outside the provisions of the act, and of course, as this proceeding arises upon petition and answer, without the taking of testimony, we must accept as true this pertinent fact as set forth in the answer: Kelly v. International Clay Products Co., 291 Pa. 383; M. A. Long Co. v. Keystone Portland Cement Co., 302 Pa. 308. Since defendant's liquidation is not under the act, the distribution of its assets is not governed by the section of the statute which specifies the order of distribution in liquidation "pursuant to the provisions" of the act. It is, therefore, no defense to plaintiff's action to obtain the balance due upon his judgment to say that payment of his claim in full would constitute a preference forbidden by the act.

Defendant insists, however, that the court below properly dissolved plaintiff's attachment and stayed execution thereon as an exercise of its equitable jurisdiction to aid in the conservation of assets of a liquidating corporation for the benefit of all persons interested. When the situation is analyzed, it will be seen that there is no support for this contention. The court below made no such claim, and this power of a court of equity may be employed only where the liquidation thus protected is proceeding under the guidance of the court in accordance with some method prescribed by law, as, for instance, a receivership. Such was not the fact in the instant case. We know of no act of assembly enacted prior to 1933, nor has our attention been called to any, which provides a procedure for the voluntary liquidation of a building and loan association such as that

defendant pursued. (Cf. Stone v. Schiller B. & L. Assn., 302 Pa. 544, 557.) When defendant's liquidation was begun, the course followed, however wise it may have been, was neither authorized nor forbidden by any statute. Before the passage of the Act of 1933, there was the Act of April 9, 1856, P. L. 293, but that statute provides only for the *dissolution* of corporations by empowering the courts of common pleas to grant them permission voluntarily to dissolve. There is nothing in the record which would indicate that defendant even followed the procedure there prescribed and presented a petition praying for permission to dissolve. Indeed, so far as appears from the petition and answer before us, the vote of defendant's shareholders pursuant to which the liquidating trustees were appointed was a mere business decision to carry on the enterprise no longer and to wind up the affairs of the association. And, that such a determination by the owners to cease doing business, without taking any steps prescribed by law for liquidation or dissolution, should operate to stay the hands of general creditors whose claims have been reduced to judgment, is a most novel and unsupportable proposition, the mere statement of which should be sufficient to demonstrate its unsoundness. Yet this is the effect of the decision of the court below. Defendant argues, however, that under a number of our recent decisions, citing Brown v. Victor Building Association, 302 Pa. 254, Stone v. Schiller B. & L. Assn., supra, Sperling v. Euclid B. & L. Assn., 308 Pa. 143, Weinroth v. Homer B. & L. Assn., 310 Pa. 265, and Nice Ball Bearing Co. v. Mortgage B. & L. Assn., 310 Pa. 560, it is settled that execution against a building and loan association will be stayed to promote the orderly liquidation of its assets, so that they may not be unnecessarily sacrificed, to the detriment of shareholders and other creditors. In all of those cases the claims which were being pressed were those of shareholders who had withdrawn from the association, or who had dissented from the merger of their

association with another, or whose shares had matured; we held that such claimants, although they had reduced their claims to judgment and might be termed creditors, are entitled to no priority in payment over other claimants of the same class. But shareholders, as we have often said, are not creditors in the ordinary sense; they are really partners in the enterprise, and their rights are very different from those of persons whose claims are based wholly on outside transactions: Christian's App., 102 Pa. 184; Brown v. Victor Building Assn., supra; Nice Ball Bearing Co. v. Mortgage B. & L. Assn., supra. It is apparent, therefore, that the considerations which governed us in the cases cited can have no application here, where the plaintiff is a general or outside creditor, whose claim is thus entitled to payment before that of any shareholder: Weinroth v. Homer B. & L. Assn., supra; Nice Ball Bearing Co. v. Mortgage B. & L. Assn., supra. Plaintiff was neither a partner in the association nor of any of the other general creditors. Hence the reasons for holding that the claims of shareholders should be paid pro rata—which arise from the relationship, akin to that of partnership, between them —do not apply to him. Since defendant has not seen fit to follow any established procedure whereby payment of the claims of creditors may be postponed, plaintiff is entitled to use any legal device available to him to enforce payment of his judgment. It was, therefore, error for the court below to dissolve the attachment and stay execution.

The order of the court below is reversed and the rule granted upon defendant's petition is discharged, at the cost of defendant.