### Heidelberger, Trustee, *v.* Municipal Building and Loan Association, Appellant.

Argued December 13, 1934.

Before TREXLER, P. J., KELLER, CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and JAMES, JJ.

*Abraham L. Freedman,* of *Wolf, Block, Schorr & Solis-Cohen,* for appellant.

*Alexander Fried,* for appellee.

OPINION BY STADTFELD, J., March 1, 1935:

The facts and history of the case are in part tersely stated in the opinion of the court below, from which we quote as follows: "This is a suit by the plaintiff, a stock holder in the defendant association against the defendant Municipal Building and Loan Association to recover the value of five shares of the 34th Series of the capital stock of the said association owned by the plaintiff, 140 months old, upon which

the plaintiff had paid installment dues amounting to a total of seven hundred ($700) dollars.

"On March 21, 1934, the plaintiff gave due notice of withdrawal of said shares of stock, and on July 17, 1934, instituted this suit and summons in assumpsit to recover the withdrawal value thereof. In the statement of claim filed, inter alia, the plaintiff averred that the defendant association is solvent, and that half of the funds in the treasury are more than sufficient to pay the plaintiff's claim. Further, that the last annual report of said association, as of December 31, 1933, shows cash and liquid assets in excess of eighty-five thousand ($85,000) dollars, the cash amounting to $9,327.06, and United States Government securities in the sum of $76,250.63, and that the cash and liquid assets of the said association are more than twice the value of the defendant's total withdrawal obligations which the plaintiff avers to be not more than thirty-two thousand ($32,000) dollars. It is further averred that the defendant is not indebted to any banking institution and has no creditors other than its withdrawing stock holders. The copy of said annual report was attached to the statement of claim which appears to support the foregoing recited averments. The affidavit of defense was filed admitting the averments as to withdrawal and of solvency and practically the possession of the liquid assets as averred in the statement of claim.

"As a defense to the payment of claim of the plaintiff, the affidavit of defense sets up a plan of voluntary dissolution and payment of all its active shareholders, which plan was adopted at a special meeting of the board of directors on July 25, 1934, four months after the notice of withdrawal had been given by the plaintiff and three months after said notice had matured under the by-laws of the association. The said resolution is set up as new matter in the affidavit of defense.

It should be added that the defendant has paid to the plaintiff, since the institution of suit, the sum of four hundred forty-five ($445) dollars, leaving a balance of two hundred fifty-five ($255) dollars, of the amount claimed by the plaintiff. These payments were made by the liquidating trustees, but there is no averment that the plaintiff assented to the scheme of voluntary liquidation, or accepted the payments in any qualified sense.''

The resolution for liquidation, copy of which is attached to the affidavit of defense, recites that free shares had gradually shrunken and notices of withdrawal had been received on most of them; no new loans had been granted for several years and the business of the association had been confined almost exclusively to the preservation of its assets and their conversion into cash; that in the process of such conversion there had been accumulated in cash or liquid securities a sum sufficient, aside from segregated dues, to permit a 50% distribution to all shareholders. Since the January, 1931, meeting, all payments of dues on free shares had been segregated and preserved intact as a trust fund for those making such payments and had not been invested. Such segregated dues, therefore, had been returned to the shareholders by resolution adopted on the 9th day of July, 1934. The resolution determined upon the liquidation of the association, the immediate distribution to all free shareholders of a 50% dividend, and a further distribution to the shareholders as speedily as possible of their pro rata share of assets realized upon in the future.

The suit was brought apparently upon the theory that plaintiff's claim for withdrawal became due and payable at the expiration of thirty days from the date of notice.

The affidavit of defense denied that the cash and liquid assets of the association are more than twice the

value of the defendant's total withdrawal obligations, and averred that the cash and liquid assets then held by the association amount to $7,121.37; that of the $85,000 in liquid assets which defendant had on hand on January 1, 1934, $20,839.90 has been paid out in withdrawals on the plan referred to in the resolution; $25,499.38 has been repaid as segregated dues (including a payment of $190 to plaintiff); $43,715.96 has been repaid as a 50% dividend to shareholders (including a payment of $250 to plaintiff); all of which had been done in accordance with the plan of liquidation referred to.

The plaintiff entered a rule for judgment for want of sufficient affidavit of defense, and filed an answer to the new matter in the nature of a demurrer thereto. The court, in an opinion by GABLE, J., entered judgment upon the rule in the sum of two hundred sixty-two ($262) dollars, and entered judgment for the plaintiff upon the questions of law raised in the answer to new matter. From that judgment this appeal was taken by defendant association.

The method of liquidation, as provided in the resolution of the board of directors, does not follow the provisions of the Building and Loan Code of 1933. As a matter of fact, according to the averments in the pleadings, a de facto liquidation had been in progress for some time prior thereto, and, under said resolution, a pro rata distribution to free shareholders was provided for.

Section 616A of the Building and Loan Code provides: "Withdrawn ...... shares shall be paid in the order in which the withdrawals become effective ...... However, the board of directors may at any time ...... authorize payment of withdrawn ...... shares on a pro rata basis. ...... The action of the board of directors in authorizing payment to be made on a pro rata basis, ....... shall also apply to unpaid

withdrawals which became effective ....... prior to
the date on which such action was taken by the board
of directors."

In the opinion filed, the court below quoted Section
616D of the Building and Loan Association Code of
1933, which provides for the sale of the securities held
by the association, to the extent necessary, to pay
matured or withdrawn shares where such shares have
not been paid for a period of six months after the
maturities have been declared, or the withdrawals
have become effective.

Section 616F of the code provides: "The holders
of ...... withdrawn shares shall not have the power
to sue for the amount due them by virtue of such
...... withdrawal until such time as, under the pro-
visions of this section, ...... such withdrawn shares
should have been paid."

Inasmuch as six months had not elapsed at the time
of the entry of suit, after the withdrawal had become
effective, a sale of the securities owned by the associa-
tion would have been premature. Likewise the suit
was instituted prematurely.

Appellant contends that shareholders of an associa-
tion in liquidation are not entitled to judgment against
it, irrespective of the fact that the liquidation is by
the board of directors, and that a withdrawing stock-
holder is not entitled to an unrestricted judgment
where the board of directors have ordered payment of
all withdrawals to be made on a pro rata basis and
are actually carrying out such order.

Irrespective of whether the proposed liquidation is
pursuant to the code or not, if carried out according
to its terms, the distribution will result in equality
among the shareholders. That is the purpose of the
act, as well as the purport of the decisions of our
appellate courts both before and since the adoption
of the code.

If, as stated and admitted in the pleadings, the defendant association is solvent, plaintiff will not sustain any loss. If the board, or the liquidating committee, should attempt to divert or improperly distribute or apply the assets, the code affords an ample remedy. Whether the proposed method of dissolution was pursuant to the provisions of the code or not, the scheme of distribution would result in an equal distribution to all free shareholders. Equality is equity.

Appellee contends that "the action of the board in distributing its liquid assets among non-withdrawing stockholders deprives plaintiff of its opportunity to be paid in full." We do not understand that plaintiff is entitled to a preference.

As stated by Mr. Justice SCHAFFER, in Brown v. Victor Building Assn., 302 Pa. 254, 258, 153 A. 349, "Summary judgments against building associations in suits of this character should only be entered in clear cases. Building associations differ from ordinary corporations, and stockholders therein are really partners in the enterprise: Christian's App., 102 Pa. 184. After the payment of general creditors, the residue of the funds belong to the stockholders and should be distributed among them pro rata whether they have given notice of withdrawal and hold orders for the withdrawal value of their stock or not. Both claims are equally meritorious and in marshalling the assets no class is entitled to priority over the other. Withdrawing stockholders are creditors only in a qualified sense, their rights as against those with whom they have been associated as stockholders are very different from those of general creditors, whose claims are based wholly on outside transactions."

In Malis v. Homer B. & L. Assn., 314 Pa. 321 (1934), 171 A. 570, decided after the adoption of the code, Mr. Justice DREW draws a similar distinction between the rights of creditors and shareholders, on p. 325:

"In all of those cases the claims which were being pressed were those of shareholders who had withdrawn from the association, or who had dissented from the merger of their association with another, or whose shares had matured; we held that such claimants, although they had reduced their claims to judgment and might be termed creditors, are entitled to no priority in payment over other claimants of the same class."

Likewise, our own court held in Publicker v̄. Pottash Bros. B. & L. Assn., 104 Pa. Superior Ct. 530, 159 A. 58, in an opinion by former President Judge TREXLER, that a withdrawing member secures no advantage or priority over his fellow members by obtaining a judgment and the fact that the withdrawing member has obtained a judgment ascertaining the amount of her claim does not alter the character of the claim. To same effect see Sanft v. Fair & Square B. & L. Assn., 111 Pa. Superior Ct. 333, 170 A. 697.

For the reasons stated supra, we are of the opinion that the affidavit of defense was sufficient to prevent a summary judgment.

The assignments of error are sustained and the judgment of the lower court reversed with a procedendo.