## In re Wilson Building & Loan Association

*Erwin Apfel, Wolf, Block, Schorr & Solis-Cohen, David L. German, Abraham N. Bassman, Henry Arronson, Robert Levin, Gustave L. Blieden,* and *Frank H. Gelman,* for exceptants.

*Herbert P. Sundheim* and *Sylvan H. Hirsch,* contra.

LAMBERTON, J., September 14, 1937.—On February 6, 1932, the Secretary of Banking took possession of the business and property of the Wilson Building & Loan Association. On February 20, 1937, the Secretary filed his first and partial account. Numerous exceptions were filed thereto and the matter came up for hearing before the court on June 15, 1937. At that time many of the matters in dispute were disposed of by agreement or otherwise and a partial adjudication was filed by this court on June 30, 1937. We are now considering only those exceptions which were not thereby disposed of.

The Wilson Building & Loan Association (hereinafter referred to as the First Wilson Association) was duly incorporated under the laws of the Commonwealth of Pennsylvania on March 26, 1915. The Carl B. Baker Building & Loan Association (hereinafter referred to as the Baker Association) was duly incorporated under the laws of the Commonwealth of Pennsylvania on March 25, 1919. On May 1, 1930, these two associations merged under the name of Wilson Building & Loan Association (hereinafter referred to as the Second Wilson Association). There was no write-down of the paid-in value of the shares of either association in this merger. On Feb-

ruary 19, 1931, the Second Wilson Association merged with the New Wilson Building & Loan Association under the name of Wilson Building & Loan Association (hereinafter referred to as the Third Wilson Association). The New Wilson Building & Loan Association had been formed solely for the purpose of effecting this merger, had no liabilities, and had in its treasury only $25 at the time of the merger. The stock of the Second Wilson Association was written down 20 percent in this merger. The exceptions to be considered are as follows:

1. Abraham Apfel. This stockholder, prior to the second merger, had shares in the Second Wilson Association having a paid-in value of $505. As a result of the 20 percent write-down and of certain arrearages, the second merger value of this stock was $392.20. Mr. Apfel gave to the First Wilson Association withdrawal notice in December 1929. In the fall of 1930, he started suit against the Second Wilson Association to recover the withdrawal value of his shares. When this matter finally came up for trial in January 1933, the special deputy in charge of the liquidation of the Third Wilson Association agreed that Mr. Apfel should be given the status of a creditor, and the case was not tried. Mr. Apfel did not assent to the second merger. Whether or not he assented to the first merger is not clear from the record, but since claim is only being made for the second merger value, to wit, $392.20, we need not concern ourselves with what went before.

2. Nathan Pincus. This stockholder, prior to the second merger, had shares in the Second Wilson Association having a paid-in value of $1,300. As a result of the 20 percent write-down and of certain arrearages, the second merger value of this stock was $1,012. Mr. Pincus gave notice of withdrawal to the Second Wilson Association in December of 1930 and he did not assent to the second merger.

3. Edith C. Young. This stockholder, prior to the second merger, had shares in the Second Wilson Associa-

tion having a paid-in value of $720. As a result of the 20 percent write-down and of certain arrearages, the second merger value of this stock was $556. Notice of withdrawal was given to the Second Wilson Association in October 1930. The stockholder did not assent to the second merger.

4. May I. Young. The facts in this case are identical with those cited above in the case of Edith C. Young, except that the paid-in value at the time of the second merger was $360 and the second merger value was $288.

5. Abraham N. Bassman. This stockholder, prior to the second merger, had shares in the Second Wilson Association having a paid-in value of $245. As a result of the 20 percent write-down and of certain arrearages, the second merger value of this stock was $193, against which there was a stock loan of $150. This stockholder gave notice of withdrawal to the Second Wilson Association on December 1, 1930, and did not assent to the merger.

6. Elizabeth Bassman. This stockholder, prior to the second merger, had shares in the Second Wilson Association having a paid-in value of $455. As a result of the 20 percent write-down and of certain arrearages, the second merger value of this stock was $361. This stockholder gave notice of withdrawal to the Second Wilson Association on December 1, 1930, and did not assent to the merger.

7. Minnie Grossman Falk. The facts in this case are identical with those recited above in the case of Elizabeth Bassman, except that the paid-in value was $870 and the second merger value, less arrearages, was $680.

8. Esther Grossman. The facts in this case are identical with those recited above in the case of Elizabeth Bassman, except that the paid-in value was $970 and the second merger value, less arrearages, was $770.

9. Jean Grossman. The facts in this case are identical with those recited above in the case of Elizabeth Bass-

man, except that the paid-in value was $1,065 and the second merger value, less arrearages, was $843.

10. Esther Grossman, administratrix. The facts in this case are identical with those recited above in the case of Elizabeth Bassman, except that the paid-in value was $3,210 and the second merger value, less arrearages, was $2,548, against which there was a stock loan of $750.

11. Rose Kramer was the owner of 45 shares in the Baker Association. She did not assent to the first merger and thereafter brought suit against the Second Wilson Association to recover the merger value of her shares. On June 4, 1931, an agreement was entered into between Rose Kramer and the Second Wilson Association, fixing the value of her shares at the time of the first merger at $1,953.24, which sum the association agreed to pay. Instalments totaling $1,400 were paid on account, reducing the balance claimed to $553.24.

12. Samuel Kramer. This stockholder, prior to the second merger, had shares in the Second Wilson Association having a paid-in value of $1,230. As a result of the 20 percent write-down and of certain arrearages, the second merger value of this stock was $970. On July 16, 1930, Mr. Kramer gave notice of withdrawal and did not assent to the second merger.

13. Samuel Zeitz. The facts in this case are identical with those recited above in the case of Samuel Kramer, the paid-in value being $1,230, and the second merger value, less arrearages, being $970, against which there was a stock loan of $800.

14. Samuel Feldman. The facts in this case are identical with those recited above in the case of Samuel Kramer, except that the paid-in value was $1,160, and the second merger value, less arrearages, was $475.

15. Anna Kramer, administratrix. The facts in this case are identical with those recited above in the case of Samuel Kramer, except that the paid-in value was $1,230, and the second merger value, less arrearages, was $970.

16. William Malamut. This stockholder, prior to the second merger, owned shares in the Second Wilson Association. He did not assent to the merger and subsequently filed a bill in equity in Court of Common Pleas No. 2 of Philadelphia County, June term, 1931, no. 4854, which resulted in a decree by the court fixing the second merger value of his shares at $960 and directing that the same be paid to him. This judgment became a lien on certain real estate of the association which has been subsequently sold by decree of the court, the proceeds thereof being $2,210.48.

17. Adrienne Gilette. This stockholder paid in a total of $835. After the first merger she gave notice of withdrawal and then brought suit against the Second Wilson Association in the Municipal Court as of October term, 1930, no. 1133, to recover the withdrawal value of her shares. She did not assent to the second merger and on December 16, 1931, judgment was entered by agreement in the sum of $680, this being the second merger value of her shares. One hundred dollars was paid on account, leaving a balance claimed of $580. It is claimed that this judgment also became a lien on real estate of the association which has since been sold.

18. Lillian P. Rice was a stockholder in the First Wilson Association, her shares having a paid-in value of $3,175 at the time of the first merger. In September 1929, she gave notice of withdrawal and did not assent to the first merger. Following the second merger, she started an action in equity which never came to trial.

19. Hyman Perchin was a stockholder in the Baker Association. On February 6, 1930, he gave notice of withdrawal and did not assent to the first merger, but paid dues subsequent thereto. He did not assent to the second merger and is claiming the second merger value of $949. . . .

Broadly stated, it is the contention of exceptants that they are creditors entitled to share on an equality with other creditors, while the contention of the Secretary of

Banking is that exceptants are not creditors but have the same status as a stockholder who assented to the merger.

We may start out by saying that none of the exceptants is entitled to any priority by reason of having given notice of withdrawal. The burden is on a withdrawing stockholder to show that his time for payment has been reached in accordance with the Acts of April 29, 1874, P. L. 73, and April 10, 1879, P. L. 16: Brown v. Victor Bldg. Assn., 302 Pa. 254. None of the exceptants attempted to sustain this burden and consequently their status is that of nonassenting rather than withdrawing stockholders.

Insofar as these exceptants are concerned, there is no distinction between those who actively dissented and those who merely failed to assent to the merger (Nice Ball Bearing Co. v. Mortgage B. & L. Assn., 310 Pa. 560; Weinroth, Executrix, v. Homer B. & L. Assn., 310 Pa. 265), and no advantage could be gained by the mere starting of a suit at law or an action in equity. The status of the first 19 exceptants is, therefore, the same, to wit, stockholders not assenting to the second merger, except in the cases of Lillian P. Rice and Rose Kramer, who did not assent to the first merger, and Adrienne Gilette and William Malamut, whose claims were reduced to judgment following the second merger. It is important for us, therefore, to determine what is the status of a nonassenting stockholder.

Although a building association is a corporation, as between themselves the stockholders are partners (Christian's Appeal, 102 Pa. 184, Hall v. Greater Adelphi B. & L. Assn., 113 Pa. Superior Ct. 14, and Malis v. Homer B. & L. Assn., 314 Pa. 321), and no stockholder will be entitled to obtain a preference over any other stockholder by withdrawal or otherwise, even though the claim be reduced to judgment: Publicker et al. v. Pottash Brothers B. & L. Assn., 104 Pa. Superior Ct. 530; Weinroth, Executrix, v. Homer B. & L. Assn., supra; Educational Society of Yozgad, Inc., v. Gordon, etc., 310 Pa. 470;

Malis v. Homer B. & L. Assn., supra; Sanft v. Fair & Square B. & L. Assn., 111 Pa. Superior Ct. 333. This was the status of exceptants down to the date of the merger.

Upon the merger, the association in which exceptants were partners ceased to exist, and a new corporation came into being: Nice Ball Bearing Co. v. Mortgage B. & L. Assn., supra; Weinroth, Executrix, v. Homer B. & L. Assn., supra; Educational Society of Yozgad, Inc., v. Gordon, etc., supra. Stockholders who assented to the merger became stockholders and, therefore, partners in the new association: Nice Ball Bearing Co. v. Mortgage B. & L. Assn.; Weinroth, Executrix, v. Homer B. & L. Assn. No stockholder of a constituent association can be required to become a stockholder of a new association against his will (Nice Ball Bearing Co. v. Mortgage B. & L. Assn.) and, consequently, exceptants did not become stockholders in the new association, nor did they become partners therein of the stockholders who assented: Oechsle et ux. v. Lodge B. & L. Assn., 119 Pa. Superior Ct. 597. Upon the merger, it became the duty of the new association to pay to nonassenting stockholders the value of their stock in the constituent associations. As was said in Ferrando v. U. S. National B. & L. Assn., 307 Pa. 25:

"When a corporation, against the protest of one of its stockholders, transfers all its assets either through sale or merger to another corporation, a dissenting stockholder is entitled to demand and receive in cash the value of his stock at the time of such transfer."

In the absence of evidence to the contrary, this value is deemed to be that fixed in the merger agreement: Ferrando v. U. S. National B. & L. Assn., supra; Nice Ball Bearing Co. v. Mortgage B. & L. Assn. Since the new association owed to each nonassenting stockholder a sum of money equal to the value of his shares, the nonassenting stockholder is necessarily a creditor of the new association. This undoubtedly places him ahead of shareholders who assented to the merger. This is clearly stated in

Friedman v. Southern Co-Operative B. & L. Assn., 104 Pa. Superior Ct. 514, a case involving a nonassenting stockholder. The court said:

"She is on a different footing from shareholders of the old association who became shareholders of the consolidated corporation, and is entitled to a preference as a creditor over them."

It is even more clearly stated in Weinroth, Executrix, v. Homer B. & L. Assn., supra, where the court said (p. 273):

"Dissenting . . . shareholders have a claim against the assets of an insolvent or liquidating merged company higher than the claims of shareholders in the merged company. In the distribution of assets their claims precede those of such shareholders." See also Sharps v. Homer B. & L. Assn., 111 Pa. Superior Ct. 556.

But the fact that a nonassenting stockholder is a creditor does not completely establish his status. There are many kinds of creditors, i. e., simple creditors, preferred creditors, lien creditors, secured creditors, etc. The difficult question is to determine the rights of the nonassenting stockholder in relation to the rights of two other classes of creditors, namely, those who were creditors of the constituent associations and those who subsequently became creditors of the new association.

Chief Justice Kephart in Weinroth, Executrix, v. Homer B. & L. Assn. said (p. 272):

"When a merged company is insolvent or liquidating, the question of unscrambling the rights of creditors and dissenting, withdrawing, and assenting shareholders, has never been passed on by us. Just how far nonconsenting or withdrawing shareholders may pursue the corporate property of the constituent, or fasten their claims on the property of the merged company, has never been discussed.

"As a general rule the rights of creditors are superior to those of shareholders of any class. We have decided creditors may pursue the property of the constituent, as

it is liable for the claims of its creditors. . . . Creditors may also pursue the assets of the merged company. . . . There may be a clash between creditors of the constituents and those of the merged company. We do not pass on this question. Nor do we pass on the right of a creditor of a merged concern as such as opposed to rights of dissenting and withdrawing members of a constituent. All these contests may become a question of marshalling of assets."

We thus see that on January 9, 1933, Chief Justice Kephart stated that the questions we are now considering had never been passed on by the Supreme Court. There are subsequent appellate court decisions which might be construed as holding that nonassenting stockholders are in a class by themselves, superior in right to assenting stockholders, but inferior to what we will term ordinary creditors, whether the latter be creditors of a constituent or only of the merged association. But in no case was this point before the court for decision, and whether the language used was even dictum to this effect is open to doubt. Thus in Nice Ball Bearing Co. v. Mortgage B. & L. Assn., supra, decided seven days after the Weinroth case, but argued more than a month before the Weinroth decision, the only question before the Supreme Court was the right of a nonassenting stockholder to recover judgment against the merged association. Justice Simpson decided that the nonassenting stockholder had this right, but then added these unnecessary words (p. 569) :

"Only those who assented to the merger, together with others in like situation in the other six merging associations, became members of the new association, entitled to all its assets and to all profits subsequently made, subject (1) to debts due the public authorities; (2) to the creditors whose claims did not arise by reason of their having once been shareholders; and (3) to the creditors whose claims did thus arise."

If Justice Simpson merely named these three classes as being ahead of assenting stockholders, without meaning that they had priority in the order named, there is no

significance for us in the language used, but if he intended to indicate the order of priority, it is very significant. But Justice Simpson then went on to say:

"As to the second, the new association is bound to pay those liabilities in accordance with the terms of the particular obligations. As to the last, as we have already shown, the indebtedness to them is payable as soon as the amount is determined; but, in view of the relation, akin to a partnership, which once existed between all the shareholders, the court below, in the exercise of a sound discretion, may and should, upon the entry of appropriate security by the solvent new association, give to it, acting diligently, a reasonable time to make such payments."

These words destroy all priority of class two over class three. The nonassenting stockholder who has reduced his claim to judgment is to be paid, either immediately, or ultimately because of the entry of security, regardless of whether or not other creditors are paid. Such a member of class three is thus put at least on a par with, and perhaps ahead of members of class two.

The cases of Educational Society of Yozgad, Inc., v. Gordon, etc., supra, and Malis v. Homer B. & L. Assn., supra, are not helpful. They both involve the right and duty of the court to restrain execution on judgments entered against building associations. In the first case the judgment was obtained by a withdrawing stockholder, and in the second by an ordinary creditor. In neither case is there a conflict between ordinary creditors and nonassenting stockholders.

The case of Steinau v. Great Oak B. & L. Assn., 322 Pa. 545, shows how careful we must be to read the words of the Supreme Court in connection with the particular facts involved. In that case Justice Drew said of a stockholder of a constituent association:

"He may have objected to the merger but he did not thereby become a creditor of the new association."

Read by itself this statement would be conclusive of the matter now being considered, and would overrule

many previous decisions of the Supreme Court. But a few lines further down Justice Drew said:

"If it be conceded . . . that he was . . . a nonassenting stockholder, he is nevertheless barred by virtue of his failure to institute his action within the period prescribed by the Act of May 15, 1933, P. L. 794".

In short, Justice Drew does not say that a nonassenting stockholder cannot be a creditor, but he says that this particular nonassenting stockholder was not a creditor because he did not comply with the statute. The statute does not apply to exceptants in our case, as we shall hereinafter show.

In the Superior Court we have the case of Sharps v. Homer B. & L. Assn., supra. A nonassenting stockholder secured a judgment against the merged association, which subsequently went into voluntary liquidation. It was then held that execution should be restrained. The court discussed the rights of creditors of the constituent association and of other nonassenting stockholders, and said:

"If plaintiff is permitted to issue execution and recover his judgment he may secure a preference over creditors having superior rights to his, and over other creditors in the same class with himself; while in the orderly liquidation and distribution by the liquidating trustee under the control and direction of the court, the rights of all including this plaintiff will be observed and protected."

Nothing is decided except that liquidation should not be disturbed by execution.

In Hall v. Greater Adelphi B. & L. Assn., there was a suit by a nonassenting stockholder. The questions before the Superior Court were the amount of the judgment and the restraint of execution, neither of which is of interest to us in the present connection. Judge Cunningham then used practically the same words as were used by Justice Simpson in the Nice Ball Bearing Co. case, which we have quoted above, and cited the Nice Ball Bearing Co. case as his authority. We need not here repeat what we said above when we were considering that opinion.

After reviewing these decisions, and others which have been cited by counsel, we are of the opinion that the question at issue is still undecided by our appellate courts, as it was when Justice Kephart issued his opinion in the Weinroth case in January 1933. We are, therefore, at liberty to consider the matter de novo and to decide as we think reason and justice require.

Let us first consider the status of a nonassenting stockholder with regard to those who subsequently become creditors of the new association. We may start our reasoning with the axiom that creditors of a building association are entitled to payment ahead of stockholders. But the relation of stockholder and creditor never existed between the persons we are considering. The subsequent creditor was never a creditor of the constituent association, and the nonassenting stockholder was never a stockholder of the new association. It was because of his refusal to be such that he became a creditor of the new association at the moment of the merger. The status of the nonassenting stockholder as a creditor was acquired before the subsequent creditor had any status at all. We can conceive of no theory, based on logic or justice, which would give subsequent creditors of the new association priority over nonassenting stockholders of the constituent associations. They are, in our opinion, pari passu.

We will next consider the status of a nonassenting stockholder with regard to those who were creditors of a constituent association. For the purpose of convenience we will assume that association A and association B merged and became association C. Prior to the merger, creditors of association A are entitled to payment ahead of stockholders of association A out of the assets of that association, and creditors of association B are entitled to payment ahead of stockholders of association B out of the assets of that association, but creditors of association A are entitled to no payment out of assets of association B, either prior to, or on an equality with, or subsequent to stockholders of association B, and vice versa. Upon

the merger, creditors of association A and association B become creditors of association C, and, therefore, are entitled to priority in payment out of all of the assets of association C ahead of those stockholders of both A and B who assented to the merger and therefore became stockholders of association C. But at the moment of the merger, nonassenting stockholders of A and B likewise became creditors of C. The right of creditors of associations A and B to priority was unimpaired by the merger (Weinroth, Executrix, v. Homer B. & L. Assn., supra; Sharps v. Homer B. & L. Assn., supra) but was not increased thereby. Those who had been creditors of association A retained their priority in regard to assets contributed to the merger by association A, but acquired no priority in regard to assets contributed by association B, or in regard to assets thereafter acquired by association C. Those who had been creditors of association B retained their priority in regard to assets contributed to the merger by association B, but acquired no priority in regard to assets contributed by association A, or in regard to assets thereafter acquired by association C. These rights to priority could be enforced only by tracing the assets of the debtor constituent association into the assets of the merged association. In regard to assets of the merged association which could not be traced, the creditor of a constituent lost his priority, and his only status is that of a creditor of the merged association, on an equality with all other creditors of the merged association, whether their status arose from a debt of the other constituent, from a debt incurred after the merger, or from a debt incurred to a nonassenting stockholder at the moment of the merger. To hold otherwise would be contrary to reason and might give rise to great injustice, as is illustrated by an actual case in which we are about to write an adjudication.

In that case there were seven associations, parties to a merger. All seven were heavily indebted. After the merger the new association struggled along for a while and then crashed. There were nonassenting stockholders in

each constituent association. If a creditor is to be given priority in all of the assets of the new association simply because he was a creditor of a constituent, he might occupy an unduly favored position. It might be that one association went into the merger with few debts and valuable assets and another association went into the merger with assets which turned out to be bad and heavily indebted. The first association contributed to the merger assets sufficient to pay all of its debts and leave something for its stockholders. The second association contributed to the merger assets sufficient to pay only a pittance to its creditors and nothing to its stockholders. If creditors of both constituent associations be permitted to assert their priority only by tracing assets, no injustice would be done, for the creditors of the first association would trace ample to pay their debts, and the creditors of the second association would trace little. But, if a creditor is entitled to priority as to all of the assets of the new association, merely because of the fact that he was a creditor of one of the constituents, grave injustice would result. The creditor of the weak association would be entitled to priority over the nonassenting stockholder of the strong association and the creditor might be paid in full and the stockholder get nothing, although in case of separate liquidation of the two associations, this creditor would have gotten but a part of his debt and this stockholder might have been paid a substantial sum.

Counsel for the Secretary of Banking contends that the foregoing is immaterial, because the order of distribution is governed by section 1011*B* of the Department of Banking Code of May 15, 1933, P. L. 565, which reads as follows:

"The following shall be the order and preference followed by the secretary in the distribution, pursuant to the provisions of this act, of the assets of any building and loan association the affairs of which he as receiver is liquidating:

"First. Any expenditure made by the secretary as receiver, which under the provisions of this act, is to be paid out of the assets of the institution.

"Second. Any fee or other debt owing to the department for examinations, or other services rendered, or penalties incurred, prior to the taking of possession by the secretary, as receiver; any other claim of the Commonwealth of Pennsylvania; and any other claim which is given a preference by law.

"Third. Any claim of a creditor of the association, other than the claim of a shareholder arising from his ownership of shares.

"Fourth. Any claim of a shareholder arising from his ownership of shares, whether such shares be installment, fullpaid, prepaid, matured, or any other type. The amount of the claim arising from each share shall be the amount actually paid in on account of such share, less any amount lawfully deductible therefrom by the association, except in the case of a lawfully and properly matured share, in which case the amount of the claim shall be the actual par value of the share less any payment received on account thereof from the association and less any other amount lawfully deductible therefrom by the association."

Counsel for the Secretary of Banking argues that all ordinary creditors, both those of the constituent and of the merged association, are prior in payment to nonassenting stockholders, because the former are included in paragraph 3 and the latter in paragraph 4. We cannot agree for several reasons.

Paragraphs 3 and 4 are complementary. Paragraph 3 includes "Any claim of a creditor of the association, other than the claim of a shareholder arising from his ownership of shares." Paragraph 4 includes "Any claim of a shareholder arising from his ownership of shares". We agree with counsel for the Secretary of Banking that all ordinary creditors are included in paragraph 3, but we are not so sure that nonassenting stockholders are not

likewise included. We are considering the liquidation of the merged association, of which nonassenting stockholders of the constituent associations never were shareholders. They are not asserting a claim as shareholders in the merged association, but a claim which arises because they refused to be shareholders therein. We believe the words "shareholder" and "ownership of shares", must be read as referring to the association which is being liquidated, and if this be true nonassenting stockholders are included in paragraph 3. We believe the wording of paragraph 4 is more consistent with this construction than with that suggested by the Secretary of Banking.

The Department of Banking Code, supra, was approved on May 15, 1933. The Building and Loan Code of May 5, 1933, P. L. 457, was approved on May 5, 1933. Section 1009 of the Building and Loan Code, supra, provides in case of a merger, that if a stockholder of a constituent association shall indicate his dissent as therein provided, the new association shall pay to him the fair value of his shares. Any stockholder failing to so indicate his dissent shall be conclusively presumed to have assented to the merger, that is, shall be a stockholder in the new association. Is it reasonable to believe that the legislature intended that those who dissented as the legislature prescribed should be merely on an equality with those who did not so dissent? The Secretary of Banking contends such is the fact in case of liquidation.

But whatever may be the correct construction of section 1011$B$ of the Department of Banking Code, we are of the opinion that it has no bearing upon the question before us, for in our judgment the rights of all parties were fixed as of February 6, 1932, the date on which the Secretary of Banking took possession, and are controlled by the law as it then was. It would be a strange situation if a claimant should be entitled to one status on the date when the secretary took possession, and an entirely different status on the date when distribution takes place. What a claimant would receive in a liquidation might

depend upon the speed with which the estate was settled. If the Secretary of Banking is correct, if this association had been entirely liquidated within one year, nonassenting stockholders would have one status, whereas, because the liquidation has taken several years, their status has entirely changed. How could we be certain that distribution should be made under the Act of 1933? That act may be changed by amendment before the liquidation is completed. As a matter of fact, section 1011*B* of the Act of 1933 has already been amended by the Act of July 2, 1935, P. L. 525.

In the case of an assignment for the benefit of creditors, our Supreme Court said in Prudential Trust Company's Assignment, 223 Pa. 409, 414:

"The extent of the interest of a creditor is fixed by the deed of trust which also fixes the time to which the several claims must be referred for adjustment and not the date of the decree of distribution. The creditor having thus a fixed and vested interest as of the date of the assignment, it cannot be reduced to his prejudice by subsequent legislation, or otherwise, without interfering with a vested legal right."

In Dean & Son's Appeal, 98 Pa. 101, an insurance company went into liquidation. Subsequently, there was a loss on an outstanding policy. Our Supreme Court said:

"The distribution of the assets was an immediate duty on the part of the receiver; its delay is due merely to the fact that time is necessary to realize them. If, therefore, distribution had been practicable immediately after the appointment of the receiver, the appellants would have received only a dividend upon the premium they had paid. Does the fact that the distribution was necessarily delayed, change the rights of the parties, and introduce a new class of creditors who were not creditors at the time of the dissolution? We find neither reason nor authority for such a proposition."

In the case of Triegle v. Acme Homestead Assn., 297 U. S. 189, the legislature of Louisiana passed a statute

changing the rights of stockholders in building and loan associations. The Supreme Court of the United States held the statute unconstitutional. True, the association involved was solvent, but the reasoning applies with equal force to the situation before us. Mr. Justice Roberts said:

"The statute impairs the obligation of the appellant's contract and destroys his vested rights in contravention of Article 1, §10, and Amendment XIV, §1, of the Constitution. . . . The provision is comparable to a statute declaring that whereas preferred stockholders heretofore have enjoyed a priority in the distribution of assets, in that respect they shall hereafter stand *pari passu* with common stockholders. Such an interference with the right of contract cannot be justified by saying that in the public interest the operations of building associations may be controlled and regulated, or that in the same interest their charters may be amended. The statute merely attempts, for no discernible public purpose, the abrogation of contracts between members and the association lawful when made."

There is also the contention that the nonassenting stockholders have lost their standing because they did not bring any action to enforce their rights within six months after the effective date of the Act of May 15, 1933, P. L. 794. In our opinion this act has no application where the merged association was in the possession of the Secretary of Banking at the time of its passage. The Banking Act of June 15, 1923, P. L. 809, provided a complete system for the orderly liquidation of building and loan associations, the presentation of claims, and distribution of assets. It provides for suit against the secretary only for the recovery of specific property. Our Supreme Court has said in Cameron v. Carnegie Trust Co., 292 Pa. 114:

". . . the proper procedure on questions affecting a distribution of the funds collected by the secretary, is to present a claim when his account has been filed and is

before the court, at which time all the distributees can be heard, and from the decree which follows they alone have the right to appeal".

Justice Simpson then went on to say that there can be no preliminary determination regarding any claim on the funds in the hands of the secretary, except in one case cited which is of no interest to us. The provisions of the Department of Banking Code of 1933 are substantially the same in regard to these matters. We, therefore, find that the nonassenting stockholders whose claims we are considering had no right to bring suit, and they certainly cannot be prejudiced for failing to do something which they had no right to do.

We have stated the general propositions of law which are to govern and we can now consider specific cases. There is a considerable amount of money owing to ordinary creditors (by which we mean creditors other than nonassenting stockholders), by far the greater part of which was owed by the Second Wilson Association, one of the constituent associations in the second merger. There has been no attempt at tracing, and the normal result would be that creditors of the constituent would lose their priority. However, at the time of the second merger, the New Wilson Association was a mere shell, and all of the assets and liabilities that went into the merger were those of the Second Wilson Association. We think this of itself constitutes a sufficient tracing. A moment before the merger, creditors of the Second Wilson Association were prior to stockholders in regard to all of the assets of that association. A moment after the merger, the assets and creditors of the new association were identical with those of the Second Wilson Association and the priority of creditors in those assets continued. This is not a case of the merger of two sizeable associations, each having assets and creditors, the assets of the two being mingled and tracing being required. We should not let theory close our eyes to facts. We, therefore, hold that the rights of creditors of the Second Wilson Association

continued superior to the rights of all who are merely creditors of the Third Wilson Association, including those stockholders of the Second Wilson Association who did not assent to the merger.

Lillian P. Rice, being a nonassenting stockholder in regard to the first merger, thereby obtained the status of a creditor of the Second Wilson Association, and is on the same basis as other creditors of that constituent association in the amount of $3,175. As was stated in Oechsle et ux. v. Lodge B. & L. Assn., supra: "The liability . . . on the first merger having become fixed, no subsequent merger can have the effect of reducing it." .

Rose Kramer, being a nonassenting stockholder in regard to the first merger, thereby obtained the status of a creditor of the Second Wilson Association, and is on the same basis as other creditors of that constituent association, in the amount of $553.24.

William Malamut, as a judgment creditor of the Third Wilson Association, with a lien upon real estate, the proceeds of which are more than sufficient to pay his claim, is entitled to be paid the amount of his judgment, to wit, $960, with interest, ahead of other creditors of every class.

Adrienne Gilette sued the Second Wilson Association, and after the second merger recovered judgment for the second merger value of her shares without any amendment suggesting the merger. Her judgment is, therefore, necessarily against the Second Wilson Association and cannot bind real estate, which at the time the judgment was entered, was owned by the Third Wilson Association. She is entitled to no priority by virtue of her judgment, but as a nonassenting stockholder has the status of a creditor in the amount of $580.

The remaining exceptants, except Anna E. Gordon, are entitled to the status of creditors, subsequent in payment to creditors of the Second Wilson Association, but on an equal footing with creditors of the Third Wilson Association.

*Decree nisi*

And now, to wit, September 14, 1937, it is ordered, adjudged, and decreed as follows:

1. Exceptions of Anna E. Gordon are dismissed.

2. Exceptions of Lillian P. Rice are sustained, and said Lillian P. Rice is decreed to be a creditor of the Second Wilson Association in the sum of $3,175, entitled to equality with other creditors of said Second Wilson Association, and priority over creditors of the Third Wilson Association and over nonassenting stockholders in the second merger.

3. Exceptions of Rose Kramer are sustained, and said Rose Kramer is decreed to be a creditor of the Second Wilson Association, in the sum of $553.24, entitled to equality with other creditors of said Second Wilson Association, and priority over creditors of the Third Wilson Association and over nonassenting stockholders in the second merger.

4. Exceptions of William Malamut are sustained, and it is ordered that said William Malamut be paid the full amount of his judgment, to wit, $960, and interest, out of the proceeds of the sale of real estate upon which said judgment was a lien.

5. Exceptions of the persons hereinafter named are sustained, and their claims as creditors are allowed in the amounts set after their respective names, said claims to be subsequent in payment to claims of creditors of the Second Wilson Association, but on an equal footing with other creditors of the Third Wilson Association: Abraham Apfel, $392.20; Nathan Pincus, $1,012; Edith C. Young, $556; May I. Young, $288; Abraham N. Bassman, $43 ($193, less stock loan of $150) ; Elizabeth Bassman, $361; Minnie Grossman Falk, $680; Esther Grossman, $770; Jean Grossman, $843; Esther Grossman, administratrix, $1,798 ($2,548, less stock loan of $750) ; Samuel Kramer, $970; Samuel Zeitz, $170 ($970, less stock loan of $800); Samuel Feldman, $475; Anna

Kramer, administratrix, $970; Adrienne Gilette, $580; Hyman Perchin, $949.

The prothonotary is directed to enter this decree nisi and to give notice thereof to the parties or their counsel of record.